UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

**LAMONE LAUDERDALE**                                                                            **PLAINTIFF**

**v.**                                                          **CIVIL ACTION NO. 4:22-CV-P117-JHM**

**AMY BRADY** *et al.*                                                            **DEFENDANTS**

<u>**MEMORANDUM OPINION AND ORDER**</u>

This is a 42 U.S.C. § 1983 prisoner civil-rights action. This matter is before the Court upon a motion for leave to amend the complaint (DN 38). For the reasons set forth below, the motion will be denied in part and granted in part.

**I.**

Plaintiff Lamone Lauderdale initiated this action on August 24, 2022, when he was incarcerated as a pretrial detainee at Henderson County Detention Center (HCDC). In the complaint, Plaintiff sued Quality Correctional Care (QCC), HCDC Jailer Amy Brady, HCDC Colonel Hendricks, Mitzi Weber, and Dr. Neil Troost. Plaintiff sued Defendants Brady, Hendricks, Weber, and Troost in both their official and individual capacities. Upon initial review of the complaint pursuant to 28 U.S.C. § 1915A, the Court construed the complaint as asserting Fourteenth Amendment claims for inadequate medical care against Defendants QCC, Troost, and Weber ("the QCC Defendants"); a Fourteenth Amendment conditions-of-confinement claim, a First Amendment freedom-of-religion claim, and a claim under the Religious Land Use and Institutionalized Persons Act (RLUIPA) against Defendant Brady; and a Fourteenth Amendment Due Process claim against Defendant Hendricks. The complaint also set forth state-law claims against Defendants Brady and QCC. Upon review, the Court allowed these claims to proceed against Defendants in both their official and individual capacities. By subsequent Order, the

Court granted Plaintiff's motion to substitute HCDC Jailer Eddie Vaught as a party for Defendant Brady in her official capacity (DN 21).

## II.

In the proposed amended complaint, Plaintiff seeks to add nine Defendants and several new claims. In their response to the motion to amend, Defendants Brady, Vaught, and Hendricks (hereinafter the "Henderson County Defendants") argue that "justice does not require" amendment because the claims asserted against the new Henderson County Defendants could have been included in the complaint (DN 42). The Henderson County Defendants also argue that the motion to amend should be denied because Plaintiff did not attach "evidence" in support of his new claims.[1]  In their response to the motion for leave to amend, the QCC Defendants argue that Plaintiff has failed to identify the reason for lhis ate amendment and that Plaintiff's claims against QCC CEO Lisa Scroggins are without merit (DN 44).

In Plaintiff's reply, he observes that "the claims asserted in [his] original complaint were ongoing or new claims arose after his filing." (DN 43). In a supplemental reply, Plaintiff states, "Let the record reflect that the Plaintiff's original complaint alleged claims from May 2022 up to late August 2022. The Plaintiff's amended complaint states the original claims were ongoing and new claims that arose from late August 2022 up to December 2022 when the Plaintiff was transferred to another institute." (DN 53). He then writes, "Let the record reflect that the Plaintiff was unaware on how to amend his complaint or allege his new claims. He received assistance from another inmate. Also upon discovery is where Plaintiff has obtained relevant facts and names to properly amend his complaint."

---

[1] The Court does not understand this argument. The Federal Rules of Civil Procedure do not require that a complaint or amended complaint be supported by "evidence."

### III.

Federal Rule of Civil Procedure 15(a)(1) allows a party to amend its pleading once as a matter of course within 21 days of serving it or within "21 days after service of a motion under Rule 12(b)." Fed. R. Civ. P. 15 (a)(1)(A)-(B). All other amendments must be made with the consent of the opposing party or leave of court. Fed. R. Civ. P. 15(a)(2). The grant or denial of a motion to amend under Fed. R. Civ. P. 15 is within the discretion of the district court. *Foman v. Davis*, 371 U.S. 178 (1962).

Rule 15(a)(2) embodies a permissive policy toward amended pleadings. Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."); *Brown v. Chapman*, 814 F.3d 436, 442 (6th Cir. 2016). A district court may deny a motion to amend because of (1) undue delay, (2) "bad faith or dilatory motive" by the party seeking to amend, (3) "repeated failure to cure deficiencies by amendments previously allowed," (4) undue prejudice to the opposing party, or (5) futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962). The Sixth Circuit has stated that "[t]he thrust of Rule 15 is . . . that cases should be tried on their merits rather than the technicalities of pleading." *Jet, Inc. v. Sewage Aeration Sys.*, 165 F.3d 419, 425 (6th Cir. 1999) (quoting *Tefft v. Seward*, 689 F.2d 637, 639 (6th Cir. 1982)).

At the outset the Court observes that neither set of Defendants explicitly references this standard. However, both responses seem to implicitly address undue delay and futility. Thus, it is these factors that the Court will also address.

**A. Undue Delay**

"Ordinarily, delay alone, does not justify denial of leave to amend." *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002). However, at some point, "'delay will become undue, placing an unwarranted burden on the court, or will become prejudicial, placing an unfair

3

burden on the opposing party.'" *Id*. (quoting *Adams v. Gould*, 739 F.2d 858, 868 (3d Cir. 1984)).

The party opposing the amendment has the burden of demonstrating that it would be prejudicial. *See Moore v. City of Paducah*, 790 F.2d 557, 562 (6th Cir. 1986). The Sixth Circuit has found undue delay in cases that are post judgment and in cases where discovery has closed, or where dispositive motion deadlines have passed. *See e.g.*, *Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999) (stating that allowing amendments "after discovery had passed, and a motion for summary judgment had been filed . . . would create significant prejudice to the defendants"); *Morse*, 290 F.3d at 800 ("in the post-judgment context, we must be particularly mindful of not only potential prejudice to the non-movant, but also the movant's explanation for failing to seek leave to amend prior to the entry of judgment"); *Szoke v. United Parcel Serv. of Am., Inc.*, 398 F. App'x 145, 153 (6th Cir. 2010) (citing *Corning v. Nat'l Union Fire Ins. Co.*, 257 F.3d 484, 496-97 (6th Cir. 2001)) ("a defendant suffers substantial prejudice when a plaintiff waits until after the filing of a summary judgment motion to file a motion to amend").

Plaintiff filed the motion for leave to amend prior to the close of discovery and prior to the filing of a summary judgment motion. He also explains that he filed his motion to amend after learning additional information through discovery. Thus, the Court finds no undue delay.

**B. Futility**

"[F]utility of amendment . . . is simply defined as an amendment to the complaint that would not survive a [Rule 12(b)(6)] motion to dismiss." *500 Assocs., Inc. v. Vt. Am. Corp.*, 496 F. App'x 589, 593 (6th Cir. 2012) (citing *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010)). In order to survive dismissal for failure to state a claim, "a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well pleaded factual allegations as true." *Tackett v. M & G Polymers*, *USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "But the district court need not accept a 'bare assertion of legal conclusions.'" *Tackett*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). Although this Court recognizes that *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), the "duty to be 'less stringent' with pro se complaints does not require us to conjure up unpled allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

Plaintiff seeks to add the following Henderson County Defendants in both their official and individual capacities – Colonel Gibson, Major William Payne, Megan McElfresh, Lt. Rickey Jay, and Officer Andrew Brickner.

Plaintiff seeks to add the following QCC Defendants both their official and individual capacities – CEO Lisa Scroggins, Nurse Amanda Lamar, and Mental Health Provider Arvel Jeffery Harris.

Because Plaintiff organizes his proposed amended complaint by claims, that is how the Court will organize its analysis.

### 1. "Respondeat Superior"/Supervisory Liability

Plaintiff indicates that his first claims are based upon the doctrines of "respondeat superior" and "supervisory liability." Plaintiff states that he is bringing these claims against

QCC, QCC CEO Scroggins, Dr. Troost, HCDC Jailer Vaught, Colonel Gibson ("the second in command" at HCDC), Colonel Hendricks (the "third in command" at HCDC), Major Payne, and Major McElfresh.

At the outset, the Court observes that these doctrines are one and the same. Moreover, the doctrine of *respondeat superior*, or the right to control employees, does not apply in § 1983 actions to impute liability onto supervisors. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)); *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 80-81 (6th Cir. 1995); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Rather, to establish supervisory liability in a § 1983 action, there must be "a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Bellamy*, 729 F.2d at 421 (citing *Hays v. Jefferson Cnty., Ky.*, 668 F.2d 869, 872-74 (6th Cir. 1982)). Thus, because Plaintiff does not allege that that any of the above-named Defendants official implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate, the Court finds that Plaintiff's attempt to add these claims is futile.

Moreover, although Plaintiff also summarily asserts that these Defendants should be held liable for failure to train staff, failure to discipline staff, and failure to enforce policies and procedures, the Court finds that Plaintiff's claims are not supported by factual content that allows the court "to draw the reasonable inference that [Defendants are] liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions,

and a formulaic recitation of the elements of a cause of action.") (citation omitted). Thus, the Court also finds that these claims are futile.

However, in so doing, the Court observes that to the extent the Court allowed official-capacity claims to proceed against an individual QCC or Henderson County Defendant, **it has already allowed claims based upon QCC's and Henderson County's customs and policies to proceed.** And because Plaintiff's official-capacity claims against the individual Defendants are actually against QCC or Henderson County, the addition of any official-capacity claim would be redundant and, therefore, futile. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("Official-capacity suits . . . 'generally represent [] another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell*, 436 U.S. at 691).

### 2. Medical Care

As indicated above, in its initial review of the complaint, the Court allowed Fourteenth Amendment medical care claims to proceed against QCC, Troost, and Weber in their individual capacities. In the proposed amended complaint, Plaintiff also asserts this claim against Lamar and Harris.

Upon review of the allegations set forth in the proposed amended complaint, **the Court will allow Plaintiff to add Fourteenth Amendment medical care claims against Lamar and Harris in their individual capacities**.

### 3. Conditions of Confinement

In its initial review of the complaint, the Court allowed Fourteenth Amendment conditions-of-confinement claims to proceed against the former HCDC Jailer, Defendant Brady, in both her official and individual capacities. As noted above, the Court subsequently granted

7

Plaintiff's motion to substitute current HCDC Jailer Vaught as a party for Defendant Brady in her official capacity.

Upon review of Plaintiff's allegations pertaining to his conditions of confinement in the proposed amended complaint, including claims based upon the results of overcrowding and the lack of recreation at HCDC, **the Court will allow these claims to proceed against Vaught, Hendricks, and Gibson in their individual capacities**.

### 4. Denial of Grievances

Plaintiff also asserts claims against Vaught, Hendricks, Gibson, Payne, and McElfresh for the denial of grievances "without investigating." The "denial of administrative grievances or the failure to act' by prison officials does not subject supervisors to liability under § 1983." *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)). Thus, the Court will deny Plaintiff's motion to amend the complaint to add these claims as futile.

### 5. Denial-of-Access to the Courts

In this section, Plaintiff also states that McElresh was involved in the denial of his access to the courts. It is well-established that prisoners have a constitutional right to access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 350 (1996). To state a viable claim, however, an inmate must demonstrate he suffered "actual injury" as a result of particular actions of prison officials. *Id*. at 351; *Winburn v. Howe*, 43 F. App'x 731, 733 (6th Cir. 2002) ("The United States Supreme Court has established that, in order to have standing to bring a claim for denial of access to the courts, the inmate must establish that he suffered an actual injury as a result of the alleged denial."). In other words, a plaintiff must plead and demonstrate that the actions complained of hindered his efforts to pursue a non-frivolous legal claim. *Lewis*, 518 U.S. at 351-

53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). Because Plaintiff has not alleged that any action taken by McElfresh caused any actual injury to his ability to pursue a non-frivolous legal claim, the Court finds that the addition of this claim would be futile.

### 6. Excessive Force

In this section of the proposed amended complaint, Plaintiff alleges that Lt. Ricky Jay and Officer Brickner used excessive force against him and that Major Payne watched the alleged use of excessive force but did not intervene. Based on these allegations, **the Court will allow Fourteenth Amendment excessive-force claims to proceed against Jay and Brickner and a Fourteenth Amendment failure-to-intervene claim to proceed against Payne**.

The Court, however, finds that allowing Plaintiff to amend the complaint to add failure-to-intervene claims against Gibson, Hendricks, McElfresh, and Vaught would be futile since these claims appear to be based upon their supervisory roles at HCDC.

### 7. Freedom of Religion/RLUIPA

In its initial review of the complaint, the Court allowed a First Amendment freedom-of-religion claim to proceed against Defendant Brady in both her official and individual capacities, as well as a RLUIPA claim. In the proposed amended complaint, Plaintiff seeks to sue Defendant Vaught, Colonel Gibson, and Colonel Hendricks for the same claims. Plaintiff, however, makes no specific allegations against Defendant Vaught, Colonel Gibson, or Colonel Hendricks, but only seeks to add them based upon their supervisory roles at HCDC. Thus, for the reasons already stated, the Court finds that Plaintiff's attempt to sue them in the individual capacities for the alleged violations of his rights to freedom of religion under the First Amendment is futile.

As to Plaintiff's RLUIPA claims, because a prisoner can only seek injunctive relief under RLUIPA, and because Plaintiff has been transferred from HCDC, the Court finds that adding any RLUIPA claims would be futile. *Colvin v. Caruso*, 605 F.3d, 282, 289 (6th Cir. 2010) (holding that inmate's RLUIPA claims and other claims for injunctive relief were moot because he had been transferred to a different facility); *Berryman v. Granholm*, 343 F. App'x 1, 3 (6th Cir. 2009) (holding that inmate's requests for declaratory and injunctive relief, including his RLUIPA claim, were rendered moot by his transfer to a different prison) (citations omitted)).

### 8. Failure to Protect

Upon initial review of the complaint, the Court did not allow any Fourteenth Amendment failure-to-protect claims to proceed. In the proposed amended complaint, Plaintiff alleges that he was "assaulted and battered over tablet" usage at HCDC due to Major Payne denying a grievance Plaintiff submitted allegedly complaining about the "hostile environment the table usage was causing in the unit due to overcrowding and pod boss behaviors." As explained above, the "denial of administrative grievances or the failure to act' by prison officials does not subject supervisors to liability under § 1983." *Grinter v. Knight*, 532 F.3d at 576 (quoting *Shehee v. Luttrell*, 199 F.3d 295 at 300. Thus, adding this claim would be futile, as would be adding any failure-to-protect claim against Vaught, Hendricks, or Gibson based upon their supervisory roles at HCDC.

### 9. Due Process

In its initial review of the complaint, the Court allowed a Fourteenth Amendment Due Process claim to proceed against Defendant Hendricks. Based upon the allegations set forth in the proposed amended complaint, **the Court will also allow a Fourteenth Amendment Due Process claim to proceed against Major Payne.**

10

The other allegations set forth by Plaintiff in this section of the proposed amended complaint pertain to claims addressed by the Court above.

### 10. Injunctive Relief

In the proposed amended complaint, Plaintiff indicates that he seeks various forms of injunctive relief. However, since Plaintiff is no longer incarcerated at HCDC, theses claim are moot. *See, e.g.*, *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (concluding that inmate's claims for declaratory and injunctive relief were rendered moot upon inmate's transfer from the prison about which he complained); *Henderson v. Martin*, 73 F. App'x 115, 117 (6th Cir. 2003) ("[A] prisoner's claim for declaratory and injunctive relief against certain prison officials [becomes] moot once the prisoner [is] transferred from the prison of which he complained to a different facility.").

### IV.

For the foregoing reasons, **IT IS HEREBY ORDERED** that Plaintiff's motion for leave to amend the complaint (DN 38) is **GRANTED in part and DENIED in part**.

Accordingly, **IT IS ORDERED** that the following claims are added to this action – Fourteenth Amendment medical care claims against Lamar and Harris in their individual capacities; Fourteenth Amendment conditions-of-confinement claims against Vaught, Hendricks, and Gibson in their individual capacities; Fourteenth Amendment excessive-force claims against Jay and Brickner in their individual capacities; and Fourteenth Amendment failure-to-intervene and due process claims to proceed against Major Payne in his individual capacity. In allowing these claims to proceed, the Court passes no judgment upon their merit or upon the ultimate outcome of this action.

The **Clerk of Court** is **DIRECTED** to add the following Henderson County Defendants to this action **- Colonel Gibson, Major William Payne, Andrew Brickner, Rickey Jay**, and the following QCC Defendants to this action **- Nurse Lamar and Arvel Jeffery Harris**.

**IT IS FURTHER ORDERED** that counsel shall notify the Court within **30 days** of entry of this Order whether they waive service for the added Defendants.

The **Clerk of Court** is further **DIRECTED** to change the name of Defendant Weber to "Mitzi Weber" and the name of "Dr. Troost" to "Dr. Neil Troost" on the docket sheet.

Date: May 18, 2023

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc: Plaintiff, *pro se*
    Counsel of Record
4414.011